NICOLÁS CORTÉS CÓRDOVA, peticionario, *Ex parte;* ALFREDO y FRANCISCA CORTÉS ROSARIO, recurrentes; BUENAVENTURA CORTÉS RÍOS ET AL., recurridos.

*Número:* 174  *Resuelto:* 28 de septiembre de 1962

*Enrique Igaravidez,* abogado de los recurrentes; *Ángel Manuel Ciordia,* abogado de los recurridos y *Celestino Iriarte,* abogado de los recurridos herederos Cortés Ostolaza.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ MATOS emitió la opinión del Tribunal.

En el procedimiento sobre administración judicial de los bienes de la herencia del causante Buenaventura Cortés, seguido ante la Sala de Arecibo del Tribunal Superior, se dictó resolución el 19 de marzo de 1959 aprobando el Informe Final rendido por el contador-partidor y se ordenó proceder a la partición y distribución de los bienes relictos con arreglo a ese informe. En el curso de dicha administración se dictaron varias resoluciones interlocutorias que luego sirvieron de bases para la preparación del Informe Final.

Para revisar la resolución final y algunas de las interlocutorias acudieron ante nos los coherederos Alfredo y Francisca Cortés Rosario con el presente recurso. Decidimos revisar únicamente

"Aquella parte de la resolución del Tribunal de 4 de diciembre de 1953, en que aplicó a la herencia en este caso, y particularmente a los dos herederos legítimos, las disposiciones del artículo 767 del Código Civil después de la enmienda sufrida por dicho artículo en virtud de la Ley 255 de 10 de mayo de 1949, habiendo fallecido el causante con anterioridad a dicha enmienda."

Expondremos los antecedentes necesarios para entender mejor el punto de derecho a que se contrae la revisión. Buenaventura Cortés falleció el 9 de octubre de 1948. Había otorgado testamento abierto el 27 de agosto de 1948, cuya institución de herederos quedó anulada por sentencia que dictó dicha Sala de Arecibo y que confirmamos el 10 de setiembre de 1952.(1) Como resultado de ese litigio la sucesión vino a componerse de Alfredo y Francisca Cortés Rosario, hijos legítimos del finado y de sus diez hijos naturales reconocidos nombrados: Ventura, Ángel Luis, Cristina, Ángel Manuel, Antonio, Roberto, Arturo y Ernesto Cortés Ostolaza, Buenaventura Cortés Ríos y Nicolás Cortés Córdova.

(1) Véase *Cortés* v. *Cortés*, 73 D.P.R. 693.

En abril de 1953 los dos hijos legítimos, dentro del procedimiento de administración judicial—luego de haberse presentado por las partes un inventario y avalúo de los bienes de la herencia y una petición para el nombramiento de un contador—radicaron un escrito "respecto a la partición del caudal hereditario" en el cual suplicaban que se aprobara la partición "llevada a cabo por el testador en sus disposiciones testamentarias ordenando la entrega de los bienes . . . a los distintos herederos en la extensión, forma y modo expuesto en la alegación que precede . . ." En esa alegación, los hijos legítimos informaron al tribunal que se determinara que ellos gozaban de la facultad que les concedía el Art. 767 del Código Civil de poder satisfacer en dinero o en otros bienes la cuota hereditaria que correspondía a los hijos naturales reconocidos llamados Buenaventura Cortés Ríos y Nicolás Cortés Córdova.

El tribunal de instancia en su resolución del 4 de diciembre de 1943, determinó que los herederos legítimos, a la fecha de la partición y distribución de la herencia, carecían de esa facultad. La consideró solamente como una mera formalidad procesal para distribuir la herencia, derogada por la Ley Núm. 255 de 10 de mayo de 1949.

Los recurrentes, únicos hijos legítimos del causante, señalan la comisión de dos errores. El primero se refiere a la negativa del tribunal a aplicar el último párrafo del Art. 767 del Código Civil, vigente a la fecha de la muerte del causante, negándoles la facultad de satisfacer la cuota de los dos mencionados hijos naturales reconocidos en metálico o en bienes de la herencia.

El segundo error se refiere a materia no comprendida dentro del marco de la revisión parcial aquí autorizada. Por esa razón nos abstendremos de considerarlo. ■

A juicio nuestro el primer error fue cometido. Estuvo desacertado el tribunal de instancia al considerar esa facultad como una mera formalidad procesal para la distribución

de una herencia, y que desapareció por efectos de la Ley Núm. 255 de 1949.

A la fecha en que falleció el causante, 9 de octubre de 1948, el Art. 767 de nuestro Código Civil disponía:

"Artículo 767.—Cuando el testador deje hijos o descendientes legítimos e hijos naturales legalmente reconocidos, tendrá cada uno de éstos derecho a la misma cuota que corresponda a cada uno de los legítimos no mejorados.

"La cuota que corresponda a los hijos naturales reconocidos se pagará del tercio de libre disposición, y en caso de que éste fuere insuficiente para cubrir dicha cuota, la diferencia se pagará del tercio de mejora.

"Los hijos legítimos podrán satisfacer la cuota que corresponda a los naturales en dinero o en otros bienes de la herencia a justa regulación." ■

Por virtud del tercer párrafo del transcrito artículo, un cuerpo de disposiciones eminentemente sustantivas, como es nuestro Código Civil, y comprendido en una sección que se denomina "Derechos de Hijos Ilegítimos", concedió a los hijos legítimos que concurrían a la herencia con hijos naturales reconocidos la facultad o poder de atraer al dominio de ellos la totalidad de los bienes quedados al fallecimiento de su padre, satisfaciendo en dinero o en otros bienes de la herencia la cuota correspondiente a esos hijos naturales reconocidos a justa regulación.

Como dice Manresa en sus *Comentarios al Código Civil Español*, tomo 6, página 633, edición séptima (1951):

"El segundo párrafo del artículo 840,—igual al tercer párrafo del 767 nuestro—cuya doctrina nos parece clara y acertada, consigna *un derecho* de los hijos o de los nietos, en suma, de los descendientes legítimos. A éstos corresponde la elección. Claro es, sin embargo, que si la cuota no se paga en metálico, los bienes que se adjudiquen han de ser estimados en justicia, han de ser equivalentes a la cuota, según justa regulación, como dice el artículo. Por falta de amigable acuerdo, puede procederse a la estimación pericial de todos los bienes, y, en último término, resolverán los Tribunales." —Énfasis suplido.

"Por lo demás, el objeto de la ley en ese párrafo es evidente. Evitar desavenencias y cuestiones entre los hijos legítimos y los hijos naturales con motivo de la partición de la herencia o de la proindivisión de los bienes, que en muchos casos se impondría entre unos y otros herederos."

Sánchez Román, en sus *"Estudios de Derecho Civil"*, tomo V, Vol. 2, pág. 912, nos dice:

". . . *se trata de un derecho,* o sea de una facultad, de potestativo ejercicio en los hijos legítimos, a cuyo empleo no pueden ser obligados por los naturales, pero sí de obligatoria aceptación por parte de éstos, con la garantía de la justa regulación. . . ." —Énfasis suplido.

Scævola, en su tomo XIV, pág. 887, 4ta. edición, describe esta facultad como "un remedio arbitrado por el Código" para evitar dificultades entre la sucesión legítima y la natural. Señala que "No es, pues, otra cosa que una manifestación más del predominio que . . . en lo económico tiene . . . la filiación legítima sobre la natural."

En su obra *"Manual de Derecho Civil Español"*, Vol. V, pág. 309 (1957), el profesor Espín Cánovas, la denomina como una autorización para pagar en metálico la cuota legitimaria del hijo natural reconocido y una "mayor protección a la familia legítima, que tiende a evitar muy posibles disensiones entre ambas clases de hijos."

Borrell y Soler también lo consideran como un derecho de autorización. *"Derecho Civil Español"*, tomo V, pág. 298 (1954).

Por su finalidad de conservar el principio de la unidad familiar dentro del derecho sucesorio, se asemeja ese derecho al retracto gentilicio. Quizá pueda compararse a una facultad de expropiación forzosa o a la cesión *ex lege* de la cuota legitimaria. De todos modos equivalía a una preferencia adquisitiva concedida en favor del hijo legítimo respecto a los bienes de la herencia. (²) ▪

---

(²) Ésta no es una facultad que puede utilizarse eficazmente en todo momento. Está condicionada al requisito de la justa regulación, por lo

Del mismo modo nuestro código, en su Art. 765, otorga a "los herederos" la facultad de satisfacer al cónyuge su parte de usufructo, asignándole una renta vitalicia, o los productos de determinados bienes o un capital en efectivo, procediendo de mutuo acuerdo, y, en su defecto por virtud de mandato judicial. También, el padre que en interés de la familia quiere conservar indivisa una explotación agrícola, industrial o fabril, podrá dejarla a un solo hijo, disponiendo que se satisfaga en metálico su legítima a los demás, con arreglo al Art. 1009. ■

Mientras no se efectúe definitivamente la partición de la herencia la cuota del hijo natural reconocido, en toda sucesión a que se aplique el tercer párrafo del Art. 767, estará sujeta o afectada por la posibilidad del ejercicio de esa facultad que constituye un derecho de carácter sustantivo, cuyo titular no puede ser perjudicado por legislaciones posteriores. No se trata de una disposición procesal o adjetiva, de interés público, derogable retroactivamente.

Esa disposición de privilegio estaba consagrada por el párrafo segundo del Art. 840 del Código Civil español que empezó a regir aquí el 1 de enero de 1890—en España sigue en vigor. Al aprobarse el Código Civil revisado de 1902 el débil movimiento de mejoramiento social de entonces obtuvo su eliminación. Pero la ausencia en nuestra legislación familiar y sucesoria de ese privilegio y de otros duró poco. Se restableció por el Art. 14 de la Ley de 9 de marzo de 1905. En la edición de 1930 continuó en vigor como el tercer párrafo del Art. 767 del Código Civil. Se volvió a

que para proceder con suficiente base a su ejercicio el hijo legítimo debe esperar a que esté preparado algún proyecto de partición, con todas sus operaciones de inventario, avalúo, liquidación, colación, división, formación de haberes y adjudicación. Entendemos que no existiría esa facultad cuando se trate del legado de cosa cierta y determinada que haga el testador en favor del hijo natural reconocido, en adición a su cuota legitimaria, puesto que en tal caso se le impone el deber al heredero de entregarle la cosa legada con todos sus accesorios y en el estado en que se halle al morir el testador.—Art. 805, Código Civil.

eliminar por la Ley Núm. 255 de 1949 que empezó a regir el 8 de agosto de ese año. El moderno torrente social económico igualitario lo arrancó de cuajo y en él desapareció para asegurar, por lo menos ante la majestad de la ley, los mismos derechos a todos los seres humanos hijos de un mismo padre. ■

Pero la derogación de ese párrafo en el año 1949, casi después de un año de la muerte de Buenaventura Cortés, sólo tuvo efectos prospectivos y no perjudicó en forma alguna el derecho sustantivo adquirido por Alfredo y Francisca Cortés Rosario de satisfacer las cuotas de los hijos naturales reconocidos llamados también a heredarlo, bien en metálico o bien en otros bienes de la herencia. Art. 3, Código Civil. ■

Los derechos sustantivos envueltos en una partición hereditaria se determinan y se rigen por las leyes vigentes al momento de fallecer el causante. No son aplicables otras distintas que se encuentren en vigor al hacerse la partición, aunque en éstas no se reconozcan, o se regulen de otro modo, los derechos adquiridos por virtud de aquéllas. [3]

Los alegatos de los herederos recurridos no nos han convencido, no obstante los magníficos esfuerzos que en ellos han desplegado, de que el derecho de los hijos legítimos de Buenaventura Cortés a adquirir las cuotas legitimarias de Buenaventura Cortés Ríos y de Nicolás Cortés Córdova, quedó derogado por la Ley Núm. 255 de 1949.

*Por lo expuesto, debe modificarse la resolución del Tribunal Superior, Sala de Arecibo, de fecha 4 de diciembre de 1953, pero únicamente respecto al extremo de la misma en que se niega la existencia o ejercicio de la facultad que el párrafo tercero del Art. 767 del Código Civil, vigente al fallecimiento del causante, concedía a los hijos legítimos del causante para satisfacer las cuotas de esos dos herederos*

[3] Véanse: *Ab Intestato de Ana Garroti*, 79 D.P.R. 190 (1956); *Torres* v. *Registrador*, 75 D.P.R. 128 (1953); y *Travieso* v. *Del Toro*, 74 D.P.R. 1009 (1953) y los casos en ellos citados sobre el punto; y *Charres* v. *Arroyo*, 16 D.P.R. 816 (1910).

*naturales, bien en metálico o en otros bienes de la herencia a justa regulación, y modificarse también la resolución del 19 de marzo de 1959, aprobando el Informe Final del contador-partidor, en tanto y en cuanto la misma no reconoció esa facultad a los hijos legítimos; y, considerando que esta herencia está sin repartir desde hace cerca de catorce años, se debe conceder por el tribunal de instancia un término breve para que los hijos legítimos del causante procedan a hacer uso de dicha facultad con arreglo a dicho artículo, si no fuera posible un acuerdo amigable entre los hermanos afectados por su ejercicio, debiendo ordenarse por ese tribunal, en su día, que se hagan en el Informe Final las modificaciones que procedieran.*