EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Consejo de Titulares del Condominio Acquamarina, Attenure Holdings Trust 11 y HRH Property Holdings LLC<br><br>Peticionarios<br><br>v.<br><br>Triple-S Propiedad, Inc.<br><br>Recurrida | Certiorari<br><br>2022 TSPR 103<br><br>210 DPR ____ |

Número del Caso: CC-2021-166

Fecha: 4 de agosto de 2022

Tribunal de Apelaciones:

Panel V

Abogados de la parte peticionaria:

Lcdo. Manuel A. Pietrantoni
Lcdo. Juan H. Saavedra Castro

Abogados de la parte recurrida:

Lcdo. Fernando Sabater Clavell
Lcdo. Luis J. Clas Wiscotich
Lcdo. Luis R. Román Negrón
Lcdo. Frank Torres Viada

Materia: Derecho de Seguros – El mecanismo de valoración o "appraisal" que establece la Ley Núm. 242-2018 es de aplicación retroactiva.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Consejo de Titulares del Condominio Acquamarina, Attenure Holdings Trust 11 y HRH Property Holdings LLC<br><br>Peticionarios<br><br>v.<br><br>Triple-S Propiedad, Inc.<br><br>Recurrida | CC-2021-166 | *Certiorari* |

**El Juez Asociado señor Rivera García emitió la Opinión del Tribunal**

En San Juan, Puerto Rico, a 4 de agosto de 2022.

En el día de hoy debemos contestar la siguiente interrogante: ¿tienen efecto retroactivo las enmiendas introducidas al Código de Seguros de Puerto Rico, por la Ley Núm. 242-2018, *infra*, las cuales viabilizan el mecanismo de valoración o *appraisal* en las reclamaciones al amparo de una póliza de seguros? **Contestamos en la afirmativa.** De este modo, reafirmamos la intención y mandato de nuestra Asamblea Legislativa al ampliar el acervo de mecanismos que propician la resolución oportuna de las reclamaciones de daños ante las entidades aseguradoras. En particular, **resolvemos que estas enmiendas son aplicables a aquellas reclamaciones de daños**

**que fueron instadas al amparo de una póliza de seguro de propiedad vigente al momento del paso de los huracanes Irma y María**.

I

Este recurso tiene su origen en los embates sufridos por nuestra Isla a consecuencia del paso de los huracanes Irma y María en el mes de septiembre de 2017. Previo a disponer de las controversias jurídicas que precisan de nuestra atención, examinemos el trasfondo fáctico que motivó este pleito.

Para el 9 de abril de 2019, el Consejo de Titulares del Condominio Acquamarina, Attenure Holdings Trust 11 y HRH Property Holdings LLC (peticionarios) presentaron una *Demanda* contra Triple-S Propiedad, Inc. (Triple-S o recurrida) por incumplimiento de un contrato de seguros. Esta reclamación tuvo como fin el obtener una indemnización que compensara los daños significativos sostenidos por la propiedad del Condominio Acquamarina como resultado del paso del huracán María.[1]

Los peticionarios expusieron que el Condominio Acquamarina es una propiedad que se compone de un solo edificio de diecisiete (17) pisos, que incluye cuarenta y siete (47) unidades residenciales y siete (7) pisos de estacionamiento en varios niveles. Además, alegaron que,

---

[1] Apéndice del *Certiorari*, *Demanda*, pág. 1.

para la fecha en la cual el huracán María causó los daños en controversia, la propiedad se encontraba asegurada bajo la póliza de propiedad comercial Núm. 30-CP-810901247-0, expedida por Triple-S.[2] Los peticionarios sostuvieron que la póliza aseguraba la propiedad contra todo riesgo de pérdida física, lo que incluía aquellos daños causados por un Huracán.[3]

Según destacaron, luego de sufrir los daños, el Condominio Acquamarina cumplió con todos los prerrequisitos que le imponía la póliza de seguros vigente, lo que incluía la notificación oportuna de la reclamación.[4] Es a partir de ello, que el condominio intentó reclamar los daños causados por el huracán María en la propiedad asegurada. Así, alegaron que le sometieron a Triple-S los estimados detallados de los daños sostenidos en apoyo a su reclamación.[5] Posteriormente, indicaron que Triple-S envió personal para evaluar el monto de los daños.

No obstante, los peticionarios expusieron que Triple-S se negó a pagar más de $497,514.23 por concepto de los daños.[6] Además, al momento de instar la *Demanda,* habían transcurrido más de setecientos (700) días desde el paso del huracán María sin que los peticionarios hubiesen

---

[2] Íd., pág. 6.
[3] Íd.
[4] Íd.
[5] Íd., pág. 7.
[6] Íd., pág. 8.

recibido un pago por las pérdidas.[7] De esta manera, los peticionarios alegaron que Triple-S actuó con dolo y mala fe al negarse a pagar la reclamación bajo la póliza de seguros. Afirmaron que Triple-S, intencionalmente y a sabiendas, le había hecho falsas representaciones con el fin de evadir su responsabilidad contractual de pagar los daños cubiertos por la póliza. Por todo lo anterior, reclamaron del foro primario que se le concediera una indemnización no menor de $14,000,000.00, menos cualquier deducible aplicable y cualquier cantidad pagada previamente.[8]

Tras varios trámites, el 10 de mayo de 2020, los peticionarios interpusieron una *Moción Solicitando Autorización para Referir Controversia sobre los Daños al Proceso de "Appraisal" Establecido por la Ley 242*.[9] Según adujeron, el 27 de noviembre de 2018, la Asamblea Legislativa aprobó la Ley Núm. 242-2018, *infra*, la cual requiere que las aseguradoras de propiedad participen en un procedimiento de valoración o *appraisal*, para resolver las disputas en torno al valor de una pérdida sujeta a

---

[7] Íd.

[8] Íd., pág. 12.

[9] Cabe resaltar que Triple-S no presentó su *Contestación a Demanda* hasta el 4 de agosto de 2020, toda vez que en el ínterin estuvieron en controversia varias cuestiones de derecho, las cuales hoy no nos resultan necesarias considerar. Véase Apéndice del *Certiorari*, *Contestación a Demanda*, pág. 852.

reclamación, de así solicitarlo el asegurado.[10] Así, indicaron que si bien la participación del asegurado en este proceso era opcional, para la aseguradora era obligatoria.[11] Así pues, el Condominio Acquamarina manifestó su deseo de que la controversia sobre la reclamación fuera referida al procedimiento de *appraisal,* por entender que así se ayudaría a resolver prontamente el caso.[12]

Oportunamente, Triple-S presentó su *Oposición a Moción Solicitando Autorización para Referir Controversia sobre los daños al Proceso de "Appraisal" […]*. En síntesis, esbozó varios fundamentos por los cuales entendía que la solicitud de los peticionarios era improcedente. En primer lugar, argumentó que la Ley Núm. 242-2018, *infra*, por su propio texto, establece que su vigencia será prospectiva.[13] En segundo lugar, expuso que si se considerara que la Ley Núm. 242-2018, *infra*, era de aplicación retroactiva, esto equivaldría a un menoscabo de obligaciones contractuales en violación de la Constitución federal y la Constitución de Puerto Rico.[14] Además,

---

[10] Apéndice del *Certiorari, Moción Solicitando Autorización para Referir Controversia sobre los Daños al Proceso de "Appraisal" Establecido por la Ley 242*, pág. 511.
[11] Íd., pág. 512.
[12] Íd., pág. 514.
[13] Apéndice del *Certiorari, Oposición a Moción Solicitando Autorización para Referir Controversia sobre los daños al Proceso de "Appraisal" […]*, pág. 638.
[14] Íd.

sostuvo que la póliza en controversia expresamente excluyó el mecanismo de *appraisal*.[15]

Asimismo, Triple-S argumentó que la carta normativa CN-2019-248-D, emitida por la Oficina del Comisionado de Seguros, y al amparo de la cual se presentó la solicitud de referido para *appraisal*, es inoficiosa y nula. Lo anterior, se fundamentó por ser esta verdaderamente un reglamento o regla legislativa el cual fue aprobado sin seguir los procedimientos que surgen de la Ley Núm. 38-2017, mejor conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, *infra*.[16] Finalmente, argumentó que, en la eventualidad que fuese aplicable la Ley Núm. 242-2018, *infra*, el proceso de *appraisal* no aplicaría en virtud de las doctrinas de *waiver* y *estoppel*.[17]

Consecuentemente, el 16 de julio de 2020, el Tribunal de Primera Instancia emitió una *Resolución* mediante la cual declaró sin lugar la moción instada por los peticionarios. En términos generales, el foro primario concluyó que la Ley Núm. 242-2018 era de aplicación prospectiva.[18] Razonó lo anterior al aludir a la Sección 6 de la Ley Núm. 242-2018, la cual dispone que el estatuto comenzaría a regir inmediatamente después de su

---

[15] Íd.
[16] Íd.
[17] Íd.
[18] Apéndice del *Certiorari*, *Resolución* del 16 de julio de 2020, pág. 844.

aprobación, lo que, a su entender, implica que estamos ante una ley con efecto prospectivo.[19] Además, señaló que el contrato entre las partes, vigente al momento de sufrirse los daños, expresamente excluyó el mecanismo de *appraisal* mediante el endoso titulado *Puerto Rico Changes*.[20] Al entender que ese endoso es claro, inequívoco y libre de ambigüedades, el tribunal de instancia estimó que una cláusula de *appraisal* no sería aplicable en este caso.[21] Inconforme con este proceder, los peticionarios instaron una *Moción de Reconsideración*, la cual fue denegada.[22]

Aun en desacuerdo con el dictamen emitido, los peticionarios recurrieron ante el Tribunal de Apelaciones mediante un recurso de *certiorari*.[23] Tras recibir los argumentos de las partes, el 18 de diciembre de 2020, el

---

[19] Íd.

[20] Íd., págs. 846-47.

[21] Íd., pág. 847.

[22] Apéndice del *Certiorari*, *Resolución* del 7 de agosto de 2020, pág. 895.

[23] En su recurso, los aquí peticionarios plantearon ante el foro intermedio los siguientes señalamientos de error:

El Tribunal de Primera Instancia erró al aplicar el principio de la irretroactividad de las leyes (Art. 3 del Código Civil) a la Ley 242-2018.

El Tribunal erró al concluir que la cláusula de vigencia dispone en forma clara que la Ley 242-2018 aplica prospectivamente.

El Tribunal de Primera Instancia erró al no examinar la exposición de motivos ni la intención legislativa.

El Tribunal de Primera Instancia erró al concluir que el *Puerto Rico Changes Endorsement* es un pacto entre la aseguradora-asegurado, cuando realmente es una obligación estatutaria que dejó sin efecto la cláusula de appraisal contenida en la póliza modelo. Apéndice del *Certiorari*, *Petición de Certiorari ante el Tribunal de Apelaciones*, pág. 964.

foro intermedio emitió una *Resolución* mediante la cual denegó la expedición del auto. En su dictamen, el Tribunal de Apelaciones expuso que, si bien entendían que las enmiendas procedentes de la Ley Núm. 242-2018 eran de naturaleza procesal y, por tanto, retroactivas, en esta situación había una disposición contractual que vedaba el proceso de *appraisal*.[24] Es decir, que el acuerdo entre el Condominio Acquamarina y Triple-S establecía que ninguno de estos podía acudir a un procedimiento de *appraisal*, de surgir una disputa respecto a la valoración de los daños.[25] Por tanto, consideró que obligar a las partes a participar de un procedimiento de *appraisal* sería contrario a los términos claros del contrato entre estos.[26] En desacuerdo con la determinación del foro intermedio, los peticionarios instaron una *Solicitud de Reconsideración*, la cual fue denegada.[27]

Inconformes aun, los peticionarios acuden ante esta Curia mediante una petición de *Certiorari*, imputándole al Tribunal de Apelaciones la comisión de los errores siguientes:

> Erró el Tribunal de Apelaciones al no expedir el recurso de certiorari y no concluir que el endoso Puerto Rico Changes incluido en la póliza es un contrato entre las partes que excluye el procedimiento de appraisal como método para la

---

[24] Apéndice del *Certiorari*, *Resolución* del 18 de diciembre de 2020, pág. 940.
[25] Íd., pág. 941.
[26] Íd.
[27] Apéndice del *Certiorari*, *Resolución* del 11 de febrero de 2011, pág. 949.

resolución de las disputas relacionadas con el Huracán María.

Erró el Tribunal de Apelaciones [al] no expedir el recurso de certiorari y no concluir que la Ley 242 crea un procedimiento de appraisal de carácter contractual cuando la Ley 242 establece el procedimiento como un derecho del asegurado.

Erró el Tribunal de Apelaciones al no expedir el recurso de certiorari y no aplicar retroactivamente la Ley 242-2018.

Examinado el recurso, expedimos el auto solicitado el 28 de mayo de 2021. Por su parte, Triple-S acudió ante nos mediante su *Alegato de Triple-S Propiedad, Inc.* En esencia, la recurrida reitera sus argumentos en torno a la vigencia de la Ley Núm. 242-2018, *infra*; la presunta inconstitucionalidad de una aplicación retroactiva de la referida medida legislativa y la alegada improcedencia del uso de una carta normativa, que realmente representa un reglamento inválidamente aprobado, como mecanismo para presentar la petición de referido para el *appraisal*.

Contando así con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II

### A. Los contratos de seguros y la libertad contractual

Bien sabido es que en nuestra jurisdicción los contratos de seguro han sido revestidos de un alto interés público por su importancia, complejidad y efecto en la

economía y la sociedad.[28] En atención a ello, esta industria se encuentra extensamente reglamentada mediante su cuerpo rector, el Código de Seguros de Puerto Rico.[29] Como corolario de ello, hemos expresado que en materia de seguros las disposiciones del Código Civil de Puerto Rico tienen una función supletoria, por tratarse de una materia reglamentada por una ley especial.[30]

Según lo define el Artículo 1.020 del Código de Seguros de Puerto Rico, un seguro "[e]s el contrato mediante el cual una persona se obliga a indemnizar a otra o a pagarle o a proveerle un beneficio específico o determinable al producirse un suceso incierto previsto en el mismo".[31] En virtud de este pacto, las personas y los negocios pueden proteger sus bienes y obligaciones al transferir el impacto económico de los riesgos o pérdidas acordadas a cambio del pago de una prima.[32] De esta manera, el contrato de seguro tiene el propósito de indemnizar y proteger al asegurado en caso de producirse el suceso incierto previsto.[33]

---

[28] Véanse, *Consejo Titulares v. Mapfre Praico Ins.*, 2022 TSPR 15, pág. 10, 208 DPR __ (2022); *Maderas Tratadas v. Sun Alliance*, 185 DPR 880, 896 (2012).

[29] Ley Núm. 77 del 19 de junio de 1957, según enmendada, 26 LPRA sec. 101 *et seq*.

[30] *San Luis Center Apartments v. Triple-S Propiedad, Inc.*, 2022 TSPR 18, pág. 7.

[31] Art. 1.020 Cód. Seg. PR, 26 LPRA sec. 102.

[32] Véanse, *Consejo Titulares v. Mapfre Praico Ins.*, supra, pág. 10, *Maderas Tratadas v. Sun Alliance*, supra, pág. 897.

[33] *Feliciano Aguayo v. MAPFRE Panamerican Insurance Company*, 207 DPR 138, 149 (2021).

Ahora bien, en consideración al tipo de bien o derecho que se pretende asegurar, nuestro ordenamiento reconoce diversas clases de seguros. En lo pertinente, una de las pólizas que admite nuestro Código de Seguros es el seguro de propiedad. El Artículo 4.040 de ese cuerpo lo define como aquel seguro mediante el cual se asegura "toda clase de bienes raíces o muebles, e interés sobre los mismos, contra pérdida o daños por cualquier riesgo o causa, y contra pérdida como consecuencia de tales pérdidas o daños, que no sea una responsabilidad legal no contractual por tales pérdidas o daños".[34]

Como contrato que es, la póliza de seguros debe cumplir con todos los elementos esenciales que exige nuestro ordenamiento civil. Esto es, tener dentro de sí un objeto cierto, una causa lícita y un consentimiento válido.[35] Además, como es sabido, en nuestra jurisdicción los contratantes gozan de una amplia libertad a la hora de acordar los pactos y cláusulas que deban consignarse en sus contratos. No obstante, tal autonomía encuentra su límite en la prohibición que exige que esos pactos o cláusulas no sean contrarios a la ley, la moral o el orden público.[36] Este principio se hace aún más latente cuando se trata de contratos que versan sobre materias altamente

---

[34] 26 LPRA sec. 404.
[35] Véanse, Art. 1237 Cód. Civ. PR, 31 LPRA sec. 9771; *Feliciano Aguayo v. MAPFRE Panamerican Insurance Company*, supra, pág. 151.
[36] 31 LPRA sec. 9753.

reguladas. Ciertamente un ejemplo de este tipo de convenio es el contrato de seguro.

En concreto, el Artículo 11.130 del Código de Seguros dispone la normativa respecto a las cláusulas uniformes que deben contener todos los contratos de seguro. Según consigna el inciso (A) del artículo precitado, **"[l]as pólizas deberán contener las cláusulas uniformes que se requieren por las disposiciones aplicables de este Código**, si las hubiere, correspondientes a contratos de las distintas clases de seguros en particular". (Énfasis suplido).[37] Más importante aún, el inciso (2) establece que

> **Ninguna póliza contendrá ninguna cláusula incompatible o contradictoria con una cláusula uniforme usada o que se requiera usar**, pero el Comisionado podrá aprobar una cláusula sustitutiva que en su opinión no sea en ningún sentido menos favorable al asegurado o beneficiario que la uniforme de otro modo requerida.
>
> **Ningún endoso, aditamento ni ningún otro documento adherido a dicha póliza podrá en ningún respecto contradecir ninguna de las cláusulas uniformes o sustitutivas aprobadas, contenidas o que deban incluirse en la póliza. La renuncia o intento de renuncia por parte del asegurado, de cualesquiera de las cláusulas uniformes o sustitutivas, será nulo**. (Énfasis suplido).[38]

Colegimos pues, que las disposiciones citadas enuncian una obligación ineludible que tienen las partes en un contrato de seguro, pues estas tienen que incluir en su convenio aquellas cláusulas uniformes que establece

---

[37] 26 LPRA sec. 1113.
[38] Íd.

nuestro ordenamiento. **Es decir, estas cláusulas, por imperativo de ley, rigen en una relación contractual de seguro, independientemente de la voluntad o deseo de las partes para así pactarlas.**

Por otra parte, reiteradamente nos hemos expresado sobre las normas de interpretación que deben regir los contratos de seguro. Como punto de partida, encontramos que el propio Código de Seguros dispone en su Artículo 11.250 que, "[t]odo contrato de seguro deberá interpretarse globalmente, a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado, extendido, o modificado por aditamento, endoso o solicitud adherido a la póliza y que forme parte de ésta".[39] A su vez, hemos resaltado que los contratos de seguro son contratos de adhesión, pues es el asegurador quien lo redacta en su totalidad.[40] Cónsono con ello, de ordinario, venimos llamados a interpretar las disposiciones de un contrato de adhesión libremente en favor del asegurado.[41] No obstante, tal precepto no opera cuando las cláusulas en controversia son claras y libres de ambigüedad.[42] En tales casos, deberá prevalecer la voluntad de las partes según allí fue expresada.[43]

---

[39] 26 LPRA sec. 1125.
[40] *Feliciano Aguayo v. MAPFRE Panamerican Insurance Company*, supra, pág. 151 (2021).
[41] *Maderas Tratadas v. Sun Alliance*, supra, págs. 898-99.
[42] Íd. pág. 899.
[43] Íd.

Huelga resaltar que, al interpretar los términos que surjan de un contrato de seguro, precisa atenerse a las normas de interpretación que rigen los contratos en general.[44] A esos efectos, dispone el Artículo 354 de nuestro Código Civil que "[s]i los términos de un negocio jurídico bilateral son claros y no dejan duda sobre la intención de las partes, se estará al sentido literal de sus palabras".[45] Por tanto, en ausencia de ambigüedad, el cumplimiento con las cláusulas que surgen de un contrato es obligatorio y constituye la ley entre las partes.[46]

### B. El mecanismo de la valoración o *appraisal* y la Ley Núm. 242-2018

Por otra parte, y de conformidad con el inciso (3) del Artículo 11.150 del Código de Seguros de Puerto Rico,

> **Toda póliza de seguros de propiedad, en la línea de negocios comercial o personal, deberá contener una estipulación o cláusula que disponga para la resolución de disputas relacionadas con el valor de la pérdida o daños en una reclamación a base del proceso de "appraisal". Ello, a opción del asegurado y sin que limite la facultad del asegurado de acudir a los tribunales o algún foro administrativo directamente.** A los efectos de lograr mayor uniformidad, se entenderá que el asegurador cumple con este requisito cuando la póliza contenga el lenguaje de la cláusula de "appraisal" dispuesto en el formulario de póliza establecida por el "Insurance Services Offices, Inc. (ISO)", de ser dicho asegurador miembro de esa organización, o las guías promulgadas por la NAIC, de conformidad con lo dispuesto en el inciso

---

[44] *San Luis Center Apartments v. Triple-S Propiedad, Inc.*, supra, pág. 7.
[45] 31 LPRA sec. 6342.
[46] *San Luis Center Apartments v. Triple-S Propiedad, Inc.*, supra, pág. 8.

(3) del Artículo 11.190 de este Código. (Énfasis suplido).[47]

En virtud de esta disposición, se adopta y viabiliza en nuestra jurisdicción el mecanismo de valoración o *appraisal*, como vehículo para la resolución de disputas en las reclamaciones bajo una póliza de seguros.

A su vez, el Artículo 11.190 del Código de Seguros nos ilustra sobre lo que implica, en términos prácticos, este procedimiento recién adoptado. A esos fines, indica que el proceso de *appraisal* es un mecanismo "para resolver desacuerdos exclusivamente relacionados con el valor de una pérdida o daños en una o más partidas de la reclamación en pólizas de seguros de propiedad en la línea comercial o personal".[48] Consecuentemente, y sin perjuicio de que el asegurado pueda iniciar una acción en los tribunales, se considera válida una estipulación o cláusula "que disponga que **cualquiera de las partes podrá solicitar por escrito someter ante un árbitro imparcial y competente la resolución de disputas, en torno a la valoración de daños o pérdida en una reclamación** en que el asegurador haya aceptado que está cubierta". (Énfasis suplido).[49]

Ahora bien, la disponibilidad de este mecanismo en nuestra jurisdicción obedece a un desarrollo estatutario

---

[47] 26 LPRA sec. 1115.
[48] 26 LPRA sec. 1119.
[49] Íd.

reciente, pues fue mediante la Ley Núm. 242-2018, *supra*,

que se adoptó en Puerto Rico el procedimiento de *appraisal*

en las disputas de seguros.[50] De entrada, conviene

examinar la exposición de motivos de esta medida, toda vez

que consigna los antecedentes que motivaron esta actuación

legislativa. Así, se indica que

> **El paso de los huracanes en el año 2017, y sus devastadores efectos, no tienen precedente en la historia moderna de nuestra isla**. Ha quedado evidenciado que **la respuesta de la industria de seguros a esta catástrofe no fue la esperada.** Son múltiples las quejas de los asegurados por las largas trabas interpuestas por las compañías de seguros para atender oportunamente sus reclamaciones. Esto, entre otras cosas, **ha dilatado la recuperación económica de muchos negocios y ciudadanos**, lo cual ha afectado negativamente a la economía y, en algunos casos, aumentado la migración de ciudadanos y precipitado el cierre de negocios. (Énfasis suplido).[51]

Al exponer el efecto práctico que tendría esta

enmienda al Código de Seguros de Puerto Rico, nuestra

Asamblea Legislativa expresó que

> **la presente pieza legislativa posibilita el uso del proceso de valoración o "appraisal", para la resolución de conflictos en el pago de la cuantía correspondiente a reclamaciones de seguros de propiedad.** El proceso de valoración o "appraisal" es un método en que las partes someten ante un árbitro imparcial los desacuerdos relacionados a la cuantía de una reclamación de seguros. El proceso de "appraisal" es un método alterno de resolución de conflictos, comúnmente usado en los demás estados de los Estados Unidos, que no suplanta o sustituye el derecho del asegurado a iniciar un procedimiento administrativo o una acción judicial en los tribunales. **Este proceso está diseñado para brindar una alternativa rápida y de carácter no-contenciosa adicional, que facilite a las partes**

---

[50] Ley Núm. 242-2018, 2018 (Parte 2) LPR 2330-39.
[51] Íd. págs. 2330-31.

**llegar a un acuerdo en el pago por el valor justo de la reclamación**. (Énfasis suplido).[52]

Por otra parte, al continuar nuestro examen del historial de esta medida legislativa, encontramos que esta fue acogida positivamente en los respectivos informes que rindieron la Comisión sobre Relaciones Federales, Políticas y Económicas del Senado de Puerto Rico y la Comisión de Asuntos del Consumidor, Banca y Seguros de la Cámara de Representantes de Puerto Rico.[53] En particular, destacamos que en el *Informe Positivo* del Senado se afirma que esta medida surge de "la necesidad de identificar **nuevas alternativas** para hacer del proceso de reclamación de seguros uno más ágil y efectivo, **tanto para los perjudicados por el paso de los huracanes Irma y María**, como para futuros reclamantes si ocurre otra catástrofe".[54]

**C. El principio de la irretroactividad de las leyes y el menoscabo inconstitucional de las obligaciones contractuales**

Nuestro Código Civil, en su Artículo 9, establece que "[l]a ley no tiene efecto retroactivo, excepto cuando se dispone expresamente lo contrario. El efecto retroactivo

---

[52] Íd., pág. 2332.

[53] Véanse, Informe Positivo del P. del S. 1054, Comisión sobre Relaciones Federales, Políticas y Económicas Senado de Puerto Rico, 18va Asamblea Legislativa, 4ta Sesión Ordinaria; Informe Positivo del P. del S. 1054, Comisión de Asuntos del Consumidor, Banca y Seguros de la Cámara de Representantes de Puerto Rico, 18va Asamblea Legislativa, 4ta Sesión Ordinaria.

[54] Informe Positivo del P. del S. 1054, Comisión sobre Relaciones Federales, Políticas y Económicas, Senado de Puerto Rico, 18va Asamblea Legislativa, 4ta Sesión Ordinaria, pág. 6.

de una ley, no puede perjudicar los derechos adquiridos al amparo de una ley anterior".[55] En virtud de esta disposición, se afirma en nuestro ordenamiento el principio de la irretroactividad de las leyes. Este tiene como fundamento principal el valor que acarrea la seguridad jurídica en nuestro ordenamiento.[56] Es decir, el referido precepto favorece un estado de certeza e inmovilidad, a fin de que los sujetos del derecho puedan actuar amparados por determinada legislación.[57]

Así, hemos reconocido que la norma general es que la retroactividad es una excepción en la esfera jurídica, echándose a un lado solamente cuando el legislador haya promulgado tal efecto de forma tácita o expresa en el cuerpo legislativo en cuestión.[58] Por ende, si el legislador tiene la intención de que una ley sea aplicada retroactivamente, debe hacerlo constar de manera **expresa o, al menos, debe surgir con claridad del estatuto**.[59]

Cónsono con lo anterior, hemos reconocido que en aquellos casos en los cuales el lenguaje expreso de una disposición no resuelve categóricamente el asunto de su vigencia temporal, existe la posibilidad de que su aplicación retroactiva surja implícitamente del cuerpo

---

[55] 31 LPRA sec. 5323. Destacamos, que la disposición análoga del Código Civil de 1930, el Artículo 3, es esencialmente igual. Véase 31 LPRA sec. 3. (derogado).

[56] *Díaz Ramos v. Matta Irizarry*, 198 DPR 916, 929 (2017).

[57] Íd.

[58] Íd.

[59] *Clases A, B y C v. PRTC*, 183 DPR 666, 679 (2011).

legislativo en controversia.[60] En estos casos, **procede impartirle efecto retroactivo a una ley, en ausencia de un mandato expreso del legislador, cuando es patente el propósito legislativo**.[61] Por todo lo anterior, desde hace décadas expresamos que "implícitamente puede establecerse la retroactividad por el simple hecho de que se refiera a **situaciones pasadas**, o que su contenido revele claramente que para su **debida aplicación** ha de dársele precisamente carácter retroactivo". (Énfasis suplido).[62]

Ahora bien, aun en un caso en el cual se disponga expresamente que una ley sería de aplicación retroactiva, esto, de ordinario, no podrá tener el efecto de menoscabar obligaciones contractuales ni perjudicar derechos adquiridos al amparo de una legislación anterior.[63] Esta norma nos presenta dos (2) consideraciones, las cuales examinaremos por separado.

En primer lugar, la prohibición que surge del Artículo 9 del Código Civil, *supra*, solo entra en juego cuando la disposición en controversia es de carácter sustantivo. Resulta así pues es norma arraigada en nuestro ordenamiento que la legislación de corte procesal no resulta conflictiva con el principio de la

---

[60] *Díaz Ramos v. Matta Irizarry*, supra, pág. 929.
[61] *Torres Rodríguez v. Carrasquillo Nieves*, 177 DPR 728, 758 (2009).
[62] *Vélez v. Srio. de Justicia*, 115 DPR 533, 543 (1984).
[63] Íd., pág. 681.

irretroactividad.[64] Contrario a las disposiciones sustantivas, hemos expresado que las nuevas normas procesales tienen efecto retroactivo y deben aplicarse con preferencia, pues suponen mayor protección para los derechos en litigio.[65] Por lo tanto, salvo que la Asamblea Legislativa disponga otra cosa, las nuevas normas procesales se entienden que aplican retroactivamente, lo que incluye los casos aún pendientes.[66] Consecuentemente, **si se determina que un estatuto no tiene consecuencias sustantivas, es decir que no afecta ningún derecho previamente adquirido, no habría obstáculo para su aplicación retroactiva.**

En segundo lugar, en la eventualidad que la legislación con carácter retroactivo fuera de naturaleza sustantiva, esta tendría que sobrepasar un escrutinio constitucional al amparo de la cláusula contra el menoscabo de las obligaciones contractuales tanto de la Constitución federal como de la Constitución de Puerto Rico.[67] Ambas cláusulas buscan asegurar la estabilidad en las relaciones contractuales.[68] No obstante, la protección de las obligaciones contractuales no es absoluta, pues esta debe ser armonizada con el poder de reglamentación

---

[64] Véanse, *Clases A, B y C v. PRTC*, supra, pág. 680, *Ortiz v. Fernós López*, 104 DPR 851, 852 (1976); *Cortés Córdova v. Cortés Rosario*, 86 DPR 117, 123 (1962).
[65] *Clases A, B y C v. PRTC*, supra, pág. 680.
[66] Íd.; *Ortiz v. Fernós López*, supra, pág. 852.
[67] Const. EU, Art. I, Sec. 10; Const. PR, Art. II, Sec. 7.
[68] *Trinidad Hernández v. ELA*, 188 DPR 828, 834 (2013).

del Estado, en beneficio del interés público.[69] Por ende, no toda legislación que menoscaba una obligación contractual es inconstitucional.[70]

Al evaluar una presunta interferencia estatal con la contratación privada, debe auscultarse si, en efecto, existe una relación contractual, y si el menoscabo sufrido por la relación es severo.[71] Además, de entenderse que el menoscabo es sustancial, debe evaluarse si la acción del gobierno responde a un interés legítimo y si está racionalmente relacionada con la consecución de ese interés.[72] A fin de cuentas, se trata de un balance entre el interés social en promover el bien común y el interés, igualmente social, de proteger las transacciones contractuales contra la aplicación arbitraria e irrazonable de las leyes.[73]

### D. Los reglamentos de aplicación general y los reglamentos de administración interna

Según queda definido en la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU),[74] un reglamento

> [s]ignifica cualquier norma o conjunto de **normas** de una agencia que sea **de aplicación general que ejecute o interprete la política pública o la ley**, o que regule los requisitos de los procedimientos o

---

[69] Íd.

[70] Íd.; *Domínguez Castro v. ELA*, 178 DPR 1, 132 (2010).

[71] *Trinidad Hernández v. ELA*, supra, pág. 834.

[72] Íd., págs. 834-35.

[73] *Domínguez Castro v. ELA*, supra, págs. 133-34.

[74] Ley Núm. 38-2017, 3 LPRA sec. 9601 *et seq.*

prácticas de una agencia que tenga fuerza de ley. El término incluye la enmienda, revocación o suspensión de una regla existente. (Énfasis suplido).[75]

Acto seguido, el estatuto excluye de la definición de lo que es un reglamento las siguientes directrices:

> (1) Reglas relacionadas con la administración interna de la agencia o comunicaciones internas o entre agencias que no afectan los derechos o los procedimientos o prácticas disponibles para el público en general.
>
> (2) Documentos guía según definidos en esta Ley.
>
> (3) Órdenes de precios del Departamento de Asuntos del Consumidor y otros decretos u órdenes similares que se emitan o puedan emitir en el futuro por otras agencias, y que meramente realizan una determinación de uno o varios parámetros de reglamentación con base a un reglamento previamente aprobado y que contiene las normas para su expedición.
>
> (4) Formas y sus instrucciones, siempre que no constituyan documentos guía.[76]

En el curso de nuestras interpretaciones de la LPAU, hemos identificado dos (2) tipos de reglas que pueden surgir en el quehacer administrativo, a saber: las reglas legislativas y las reglas no legislativas. Son reglas legislativas aquellas que crean derechos, imponen obligaciones y establecen patrones de conducta.[77] Por el contrario, las reglas no legislativas constituyen pronunciamientos administrativos que no alteran ni los derechos ni las obligaciones de los individuos.[78]

---

[75] 3 LPRA sec. 9603.
[76] Íd.
[77] *Sierra Club v. Junta de Planificación*, 203 DPR 596, 605 (2019).
[78] *Mun. de Toa Baja v. DRNA*, 185 DPR 684, 696 (2012).

La distinción entre ambos tipos de reglas es crucial, pues la LPAU dispone ciertos requisitos para la aprobación de las reglas legislativas que resultan innecesarios respecto a las reglas no legislativas. Bajo la Sección 2 de la LPAU, cuando se trate de una actuación que aprueba, enmienda o deroga una regla o reglamento, debe observarse un proceso determinado.[79] Así, en todo procedimiento de reglamentación debe cumplirse con cuatro (4) requisitos básicos: (1) notificar al público la reglamentación que se aprobará; (2) proveer oportunidad para la participación ciudadana, que incluya vistas públicas cuando sea necesario u obligatorio; (3) presentar la reglamentación ante el Departamento de Estado para la aprobación correspondiente; y (4) publicar la reglamentación aprobada.[80]

Por otra parte, cuando se trata de reglas no legislativas, hemos expresado que estas meramente surgen cuando las agencias aprueban directrices u otras reglamentaciones informales, con el propósito de dar uniformidad a sus propios procesos, pautar la discreción administrativa u otros fines internos.[81] El común denominador en estas reglas es que no constituyen pronunciamientos administrativos que alteran derechos y

---

[79] 3 LPRA secs. 9611-16.
[80] *Sierra Club v. Junta de Planificación*, supra, pág. 606.
[81] *Mun. de San Juan v. JCA*, 152 DPR 673, 691-92 (2000).

obligaciones.[82] En estos casos, la LPAU dispensa a la agencia del cumplimiento con los requisitos de reglamentación.[83]

## III

Según intimamos, debemos resolver si la aplicación del mecanismo de valoración o *appraisal,* en las reclamaciones al amparo de una póliza de seguro de propiedad, aplica retroactivamente a las relaciones contractuales vigentes al momento de efectuarse las enmiendas al Código de Seguros de Puerto Rico, por medio de la Ley Núm. 242-2018, *supra*. Necesariamente, esto requerirá que nos expresemos, por primera vez, sobre la vigencia de estas enmiendas. De concluir que estas tienen un efecto retroactivo, tendríamos que precisar si esa aplicación implica un menoscabo inconstitucional de las obligaciones contractuales aquí litigadas. Presumiendo que ese no fuera el caso, aun restaría por dilucidar si el mecanismo en controversia fue viabilizado mediante una acción reglamentaria improcedente. Veamos.

Al examinar el texto de la Ley Núm. 242-2018, *supra*, surge la evidente intención de incorporar el mecanismo del *appraisal* a nuestro ordenamiento de seguros. Ahora bien, la controversia ante nos únicamente exige que determinemos si este mecanismo tiene que estar disponible en las

---

[82] *Mun. de Toa Baja v. DRNA*, *supra*, pág. 696.
[83] Íd.

reclamaciones cuyo origen sea previo a la aprobación de la Ley Núm. 242-2018, *supra*. Es decir, debemos decidir si son de vigencia retroactiva. Es por ello que hoy no tenemos razón por la cual debamos expresarnos detalladamente sobre los contornos del mecanismo de *appraisal*.

Según surge de nuestra normativa, la intención de que un estatuto rija de forma retroactiva representa una desviación del curso ordinario del proceso legislativo. La vigencia retroactiva no es la norma general. Aun así, puede proceder sujeto al cumplimiento con ciertos requisitos. En primer lugar, debemos examinar si la intención de que el estatuto tenga vigencia retroactiva fue consignada expresa o tácitamente por el legislador. Tal consideración requiere, naturalmente, un examen del lenguaje del estatuto en cuestión y del contexto en el cual el mismo se aprobó.

En lo aquí concerniente, no hay duda de que la Ley Núm. 242-2018, *supra*, **obedece su existencia** a los **extensos daños sufridos** por nuestra jurisdicción **como resultado del paso de los huracanes Irma y María**. Tampoco albergamos duda de que este ejercicio legislativo procedió de una determinación de que la respuesta de la industria de seguros fue menos que ideal. Así surge expresamente de la exposición de motivos de la Ley Núm. 242-2018.

> **El paso de los huracanes en el año 2017**, y sus devastadores efectos, no tienen precedente en la

historia moderna de nuestra isla. Ha quedado evidenciado que **la respuesta de la industria de seguros a esta catástrofe no fue la esperada.** Son múltiples las quejas de los asegurados por las largas trabas interpuestas por las compañías de seguros para atender oportunamente sus reclamaciones. Esto, entre otras cosas, ha dilatado la recuperación económica de muchos negocios y ciudadanos, lo cual ha afectado negativamente a la economía y, en algunos casos, aumentado la migración de ciudadanos y precipitado el cierre de negocios. (Énfasis suplido).[84]

Además, la exposición de motivos reafirma que las aseguradoras, por su rol preeminente en la **recuperación y reconstrucción**, deben mejorar su respuesta.[85] Así, se aprobaron las enmiendas al Código de Seguros de Puerto Rico, que previamente reseñamos. Ahora bien, llama a nuestra atención la disposición que surge de la Sección 6 de la Ley Núm. 242-2018.[86] Allí se expresa, respecto a la vigencia de la ley, que esta "comenzará a regir inmediatamente después de su aprobación".[87] Según razonó el Tribunal de Primera Instancia, y como ha reiterado consistentemente Triple-S, tal lenguaje expresamente dispone que estamos ante una ley cuya vigencia es prospectiva. Es decir, sostienen que esta disposición, sin más, resuelve la interrogante sobre la retroactividad de las enmiendas. **No estamos de acuerdo**.

De entrada, esta disposición solo indica que la ley entrará en vigor tan pronto la misma sea debidamente

---

[84] 2018 (Parte 2) LPR 2330-31.
[85] Íd., pág. 2331.
[86] Íd., pág. 2339.
[87] Íd.

aprobada. Es decir, que la Ley Núm. 242-2018, en vez de entrar en vigor en determinada fecha posterior, operaría tan pronto fuera aprobada conforme dispone nuestra Carta Magna. Nada más se puede deducir del lenguaje escogido por nuestra Asamblea Legislativa. Por tanto, resulta necesario recurrir al texto del estatuto y su historial.

Un examen de las distintas disposiciones expresas de la Ley Núm. 242-2018, *supra*, no revela con claridad la intención legislativa respecto a su vigencia. No obstante, al estudiar el trasfondo de la medida se esclarece este particular. Como reseñamos previamente, la exposición de motivos no lleva a otra conclusión que no sea que esta ley, y las enmiendas que promueve, surgen como reacción al desenlace de los eventos atmosféricos experimentados en el 2017. No hay duda, pues, de que a la hora de legislar, pesaron fuertemente en nuestros legisladores las vivencias que se experimentaron posterior a los huracanes.

Lo anterior nos conduce a dos (2) conclusiones. La primera es una fundada eminentemente en el sentido común. Esto es, que la legislación aprobada **resultaría de poca utilidad si excluyese de su ámbito práctico la impresionante cantidad de reclamaciones que surgieron posterior a los huracanes Irma y María**. Al expresarnos así, no perdemos de vista que nuestro rol como Poder Judicial no es el de justipreciar los motivos por los

cuales nuestro Poder Legislativo actuó de determinada manera.

No existe duda alguna de que el beneficio viabilizado por estas enmiendas fue ideado para ser hecho extensivo a los asegurados que sufrieron daños en los huracanes del 2017. El fin de esta legislación es "codificar las actuales protecciones a los consumidores que el derecho común provee y **adoptar iniciativas innovadoras**, en busca de una rápida y mejor respuesta de la industria de seguros **para las víctimas de los huracanes Irma y María** y en caso de ocurrir una futura catástrofe natural".[88]

Por otra parte, encontramos varias fuentes altamente persuasivas que inciden en nuestro análisis. Como vimos, en el *Informe Positivo* del Senado, al encomendar al pleno de ese cuerpo el P. del S. 1054, se expresó que las enmiendas al Código de Seguros surgen de "la necesidad de identificar nuevas alternativas para hacer del proceso de reclamación de seguros uno más ágil y efectivo, **tanto para los perjudicados por el paso de los huracanes Irma y María**, como para futuros reclamantes si ocurre otra catástrofe".[89] La única interpretación razonable de este lenguaje es que la legislación se concibió para que su efecto fuera retroactivo.

---

[88] 2018 (Parte 2) LPR 2333.
[89] Informe Positivo del P. del S. 1054, Comisión sobre Relaciones Federales, Políticas y Económicas Senado de Puerto Rico, 18va Asamblea Legislativa, 4ta Sesión Ordinaria, pág. 6.

Además, encontramos que la Ley Núm. 242-2018, *supra*, también fue objeto de interpretación por parte del Poder Ejecutivo. Luego de examinar esta disposición, la Secretaria de Justicia emitió una *Opinión* en la cual expresó su conclusión de que las enmiendas efectuadas al Código de Seguros de Puerto Rico, por medio de la Ley Núm. 242-2018, tenían que ser aplicables a las reclamaciones pendientes relacionadas con los huracanes Irma y María.[90] Concluyó que esta legislación constituyó una actuación excepcional del legislador "ante la lentitud y retraso de la resolución de reclamaciones a las aseguradoras en torno a los daños a la propiedad ocasionados por los huracanes Irma y María".[91]

De esta manera, no albergamos duda de que la Ley Núm. 242-2018, *supra*, fue en efecto diseñada para añadir los beneficios y procedimientos que de ella emanan a las reclamaciones que surgieron de los huracanes del 2017. **Resolvemos pues, que la Ley Núm. 242-2018, *supra*, fue diseñada y aprobada con la intención de que fuera aplicada retroactivamente.** Réstanos por dilucidar si esta aplicación retroactiva es válida.

Al considerar esta interrogante, nos ceñimos a examinar un solo aspecto de esta legislación: ¿es esta sustantiva o procesal? Como vimos, una legislación

---

[90] Op. Sec. Just. Núm. 2019-01, pág. 6.
[91] Íd., pág. 9.

retroactiva con efectos sustantivos, es decir, que cree, modifique o elimine derechos u obligaciones, debe sobrepasar un escrutinio de menoscabo de obligaciones contractuales para ser constitucionalmente válida. *A contrario sensu*, si la legislación fuera de corte procesal resultaría innecesario análisis ulterior.

**Un examen ponderado de la Ley Núm. 242-2018, *supra*, nos convence que esta ley solamente tiene efectos procesales.** Tal hallazgo procede de la naturaleza del mecanismo de la valoración o *appraisal* en sí. **Este procedimiento es eso mismo, un procedimiento.** No hace ni más o menos probable la posibilidad de que un asegurado advenga exitoso en su reclamación. Tampoco crea, modifica o elimina derecho alguno del asegurado o la aseguradora. En palabras de nuestra Asamblea Legislativa, lo único que ofrece el mecanismo del *appraisal* es "un **proceso alterno** que es más económico, eficiente y expedito".[92]

**Evidentemente, la Ley Núm. 242-2018, *supra*, particularmente en lo que concierne al mecanismo del *appraisal*, únicamente tiene efectos procesales.** No tiene efecto sobre una disposición contractual entre las partes de un contrato de seguro. La disponibilidad de este mecanismo no prejuzga ni afecta la procedencia de una reclamación. Habida cuenta de ello, resulta innecesario

---

[92] 2018 (Parte 2) LPR 2332.

cualquier análisis ulterior sobre la constitucionalidad de la medida.

Cabe señalar que, en este pleito, las partes han tenido posturas encontradas respecto al efecto que tendrían sobre el mecanismo de *appraisal*, las disposiciones del endoso *Puerto Rico Changes*, suscrito por las partes. Según surge, este endoso descartó el mecanismo de *appraisal* en el contrato entre las partes.[93] Según aduce Triple-S, aun siendo este mecanismo uno dispuesto por ley, este fue rechazado voluntariamente mediante contrato. A igual conclusión llegó el Tribunal de Apelaciones. **Carece de todo mérito este argumento.**

La cláusula uniforme que viabiliza la disponibilidad del mecanismo de *appraisal* surge del Art. 11.150 del Código de Seguros de Puerto Rico.[94] Por mandato del Artículo 11.130 del mismo cuerpo, salvo una dispensa otorgada por el Comisionado de Seguros, **toda cláusula uniforme tiene que estar presente en un contrato de seguro**.[95] En atención a ello, de poco sirve aludir a la ausencia de esta cláusula en el contrato entre las partes, toda vez que el mecanismo del *appraisal* no había sido reconocido en Puerto Rico previo a las enmiendas.

---

[93] Apéndice del *Certiorari*, *Oposición a Moción Solicitando Autorización para Referir Controversia sobre los daños al Proceso de "Appraisal" […]*, pág. 746.
[94] 26 LPRA sec. 1115.
[95] 26 LPRA 1113.

**Así, por imperativo estatutario, cualquier endoso o aditamento que se haya pactado contrario a lo exigido en ley sencillamente es nulo e inexistente**. El endoso *Puerto Rico Changes,* y cualquier otro pacto similar, surgen bajo un régimen en el cual el *appraisal* no se reconocía. **Luego de estatuirse el procedimiento, y en consideración a que su disponibilidad es obligatoria, resulta irrelevante cualquier pacto sobre un asunto en el cual las partes carecían de ámbito para disponer otra cosa**.

Por último, Triple-S argumenta que la carta normativa, CN-2019-248-D, emitida por la Oficina del Comisionado de Seguros,[96] representa una actuación administrativa improcedente, al amparo de la LPAU. De entrada, destacamos que esta carta normativa fue circulada por el Comisionado de Seguros luego de haberse emitido la *Opinión* 2019-01 de la Secretaria de Justicia. A poco examinar el documento, encontramos que este meramente instrumenta el **proceso** mediante el cual se puede solicitar el referido de la reclamación para el mecanismo de *appraisal*. Similar a la Ley Núm. 242-2018, *supra*, aquí, nuevamente, salta a la vista que estamos ante una **disposición procesal**.

Como vimos, los reglamentos o reglas legislativas "crean derechos, imponen obligaciones y establecen

_____

[96] Carta Normativa CN-2019-248-D, Oficina del Comisionado de Seguros, 20 de marzo de 2019.

patrones de conducta".[97] **La carta normativa CN-2019-248-D no crea obligación alguna, no afecta ningún derecho ni impone patrones de conducta. Es decir, no es una regla legislativa.** Todo lo contrario, la carta normativa solo pretende normalizar los procesos que puedan instarse al reclamar el mecanismo de *appraisal*. Su efecto es de naturaleza logística y procesal. Por ende, su aprobación no estaba supeditada al cumplimiento con los requisitos para la reglamentación de la Sección 2 de la LPAU.[98]

En fin, nuestro dictamen se limita a validar la aplicación retroactiva de una de las medidas reparatorias que nuestra Asamblea Legislativa tuvo a bien emplear en su afán por atender los terribles daños que ocasionaron los huracanes Irma y María. En nuestro rol como máximos intérpretes de nuestro ordenamiento jurídico, no encontramos fundamento alguno para intervenir con esta actuación legislativa. Ante una disposición cuyo único efecto es de naturaleza procesal, la cual viene acompañada de un poderoso interés social en agilizar los procedimientos de reclamaciones a las aseguradoras, resultaría improcedente obstaculizar tan loable objetivo.

**Así, reiteramos nuestra conclusión de que las enmiendas al Código de Seguros de Puerto Rico, producto de**

---

[97] *Sierra Club v. Junta de Planificación*, 203 DPR 596, 605 (2019).
[98] Véanse, 3 LPRA secs. 9611-16; *Sierra Club v. Junta de Planificación*, supra, pág. 606.

**la Ley Núm. 242-2018, *supra*, son de aplicación retroactiva. En la medida que un asegurado solicite un referido al proceso de *appraisa*l, de conformidad con los requisitos aplicables, este mecanismo debe estar disponible para agilizar la pronta resolución de las reclamaciones al amparo de una póliza de seguro de propiedad**.

IV

Por los fundamentos previamente consignados, se revoca la *Resolución* emitida por el Tribunal de Apelaciones. El Tribunal de Primera Instancia deberá referir la reclamación entre las partes para el procedimiento de valoración o *appraisal*, según contemplado en el Código de Seguros de Puerto Rico.

Se dictará Sentencia de conformidad.

Edgardo Rivera García<br>Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Consejo de Titulares del Condominio Acquamarina, Attenure Holdings Trust 11 y HRH Property Holdings LLC<br><br>Peticionarios<br><br>v.<br><br>Triple-S Propiedad, Inc.<br><br>Recurrida | CC-2021-166 | *Certiorari* |

**SENTENCIA**

En San Juan, Puerto Rico, a 4 de agosto de 2022.

Por los fundamentos expuestos en la Opinión que antecede, la que se hace formar parte íntegra de la presente, se revoca la *Resolución* emitida por el Tribunal de Apelaciones. El Tribunal de Primera Instancia deberá referir la reclamación entre las partes para el procedimiento de valoración o *appraisal*, según contemplado en el Código de Seguros de Puerto Rico.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco emitió una Opinión Concurrente. La Jueza Presidenta Oronoz Rodríguez no intervino.


Javier O. Sepulveda Rodriguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Consejo de Titulares del Condominio Acquamarina, Attenure Holdings Trust 11 y HRH Property Holdings LLC<br><br>    Peticionarios<br><br>         v.<br><br>Triple-S Propiedad, Inc.<br><br>    Recurrida | CC-2021-0166 | |

Opinión concurrente emitida por la Jueza Asociada señora Pabón Charneco.

En San Juan, Puerto Rico, a 4 de agosto de 2022.

Concurro con la decisión de este Tribunal de que corresponde la aplicación retroactiva de la Ley Núm. 242-2018, la cual enmienda la Ley Núm. 77-1957, conocida como Código de Seguros de Puerto Rico, *infra*. Sin embargo, entiendo que esta aplicación retroactiva pudo haber sido sostenida por otros fundamentos. Además, difiero del proceder de la Mayoría de concluir que no existe un menoscabo a la obligación contractual entre las partes. Sin lugar a duda, el procedimiento de *appraisal* dispuesto en la Ley Núm. 242-2018, modifica sustancialmente el contrato entre partes privadas. Así pues, lo correcto es aplicar los criterios

sobre la validez constitucional de menoscabo a las obligaciones contractuales al estatuto en controversia.

Por los hechos del presente caso encontrarse expuestos correctamente en la Opinión del Tribunal, procedo a discutir el derecho aplicable y mi postura al respecto.

## I

El Art. 3 del Código Civil de Puerto Rico vigente al momento de los hechos, dispone que "[l]as leyes no tendrán efectos retroactivos, si no dispusieren expresamente lo contrario". 31 LPRA ant. sec. 3 (derogado). Como hemos indicado anteriormente, el principio de irretroactividad responde al importante objetivo de mantener la certeza y la seguridad jurídica. *Consejo Titulares v. Mapfre Praico Ins.*, 208 DPR ___, 2022 TSPR 15; *Díaz Ramos v. Matta Irizarry*, 198 DPR 916, 929 (2017). Sin embargo, esta disposición no constituye un principio rígido de aplicación absoluta, sino que existen excepciones donde se puede aplicar retroactivamente una ley. *Torres Rodríguez v. Carrasquillo Nieves*, 177 DPR 728 (2009).

Por tal razón, los tribunales también deben considerar la intención de la Asamblea Legislativa al aprobar una ley, ya esté plasmada de forma tácita o expresa. Íd., pág. 758. Así que, si la intención de la legislatura era proveerle efecto retroactivo a una ley, de desprenderse de la misma, debe darse tal efecto. Íd.; *Nieves Cruz v. UPR*, 151 DPR 150 (2000). Por ejemplo, esta intención tácita o expresa puede surgir de un análisis de diversos elementos, como la

Exposición de Motivos, que por lo general recoge el propósito legislativo. *Consejo Titulares v. Mapfre Praico Ins.*, supra; *Brau, Linares v. ELA*, 190 DPR 315, 339 (2014); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 747 (2012). Por otro lado, cuando no surge un mandato expreso del legislador, la retroactividad de la ley solo procede cuando la intención es obvia, patente y su aplicación es "necesaria para corregir un grave mal social o para hacerle justicia". *Nieves Cruz v. UPR*, supra, pág. 159.

## II

El Art. II, Sec. 7 de la Constitución de Puerto Rico y el Art. I, Sec. 10 de la Constitución de los Estados Unidos disponen que no se aprobarán leyes que menoscaben las obligaciones contractuales. El propósito de ambas cláusulas es asegurar la estabilidad de las relaciones contractuales que se hayan establecido previo a la aprobación de algún estatuto. *Domínguez Castro et al. v. ELA I*, 178 DPR 1, 81 (2010). No obstante, este Tribunal ha expresado que la protección de las obligaciones contractuales no es absoluta, pues el Estado también tiene un poder de reglamentar en beneficio del interés público. *AMPR et als. v. Sist. Retiro Maestro V*, 190 DPR 854, 868 (2014). Véase, *United States Trust Co. of N. Y. v. New Jersey,* 431 US 1, 21 (1977). Por eso, en reiteradas ocasiones hemos expresado que no todos los menoscabos a las obligaciones contractuales son inconstitucionales. *AMPR et als. v. Sist. Retiro Maestro V*, supra.

Para analizar la validez constitucional de un estatuto bajo esta cláusula, hemos establecido dos (2) criterios a utilizar dependiendo de si se modifica un contrato en el que el Estado es parte, o uno entre partes privadas. Íd., pág. 869. Al momento de evaluar la interferencia del Estado en la contratación privada, primero debemos auscultar si existe una relación contractual y si la modificación constituye un menoscabo sustancial o severo. *AMPR v. Sist. Retiro Maestro V*, supra, pág. 869; *Energy Reverves Group, Inc. v. Kanasa Power & Light Co.*, 459 U.S. 400 (1983). De determinarse que el menoscabo es severo, será necesario evaluar si la interferencia del Estado responde a un interés legítimo y si está racionalmente relacionado con la consecución del objetivo. *AMPR v. Sist. Retiro Maestro V*, supra; *Energy Reverves Group, Inc. v. Kanasa Power and Light Co.*, supra.

Por último, si el Estado demuestra que su interferencia responde a un interés legítimo y significativo, le corresponde al Tribunal determinar si los cambios contractuales provocados por el estatuto están basados en condiciones razonables y apropiadas para cumplir el fin público que persigue la regulación. *Energy Reverves Group, Inc. v. Kanasa Power and Light Co.*, supra. Por lo tanto, si el contrato afectado es entre partes privadas, el Tribunal hará su análisis utilizando el escrutinio racional, donde deberá evaluar si la interferencia gubernamental cuenta con un interés legítimo y si está racionalmente relacionada con la consecución del objetivo.

**III**

El paso de los Huracanes Irma y María y la respuesta de la industria de seguros ante esta histórica catástrofe provocó que la Asamblea Legislativa tomara acción para proteger a los asegurados. De esta forma, aprobó la Ley Núm. 242-2018 que codificó el proceso de valoración o *appraisal* para "brindar una alternativa rápida y de carácter no-contenciosa adicional, que facilite a las partes llegar a un acuerdo en el pago por el valor justo de la reclamación". Exposición de Motivos, Ley Núm. 242-2018. Particularmente, resalto el pronunciamiento siguiente:

> Esta Administración tiene el firme compromiso de establecer herramientas legales adicionales que posibiliten una mejor respuesta de la industria de seguros a la población asegurada y contar con una industria mejor capacitada para manejar las **reclamaciones pendientes** y afrontar futuros eventos catastróficos.
>
> Es momento de, partiendo de las experiencias ya vividas, codificar las actuales protecciones a los consumidores que el derecho común provee y adoptar iniciativas innovadoras, **en busca de una rápida y mejor respuesta de la industria de seguros para las víctimas de los huracanes Irma y María** y en caso de ocurrir una futura catástrofe natural. La presente pieza legislativa propone una serie de enmiendas al Código de Seguros de Puerto Rico que recogen el sentir de las expresiones presentadas en la cumbre [Respuesta de la Industria de Seguros ante Eventos Catastróficos y Mecanismos para Asegurar la Protección de los Asegurados] dirigidas a establecer procesos que sean más agiles y faciliten la adecuada respuesta a los asegurados y el pago de las reclamaciones. Exposición de Motivos, Ley Núm. 242-2018 (énfasis suplido).

**Por tanto, de las expresiones de la Asamblea Legislativa es correcto concluir que la clara intención y**

**propósito de dicha enmienda fue proveer a las víctimas de los Huracanes Irma y María, que aún tienen casos pendientes, un método más rápido y eficiente para que reclamaran sus daños.** En vista de ello, la aplicación retroactiva de la Ley Núm. 242-2018 está fundada más allá de solo el sentido común, la utilidad, el ámbito práctico o el hecho que la Asamblea Legislativa no escribe "cosas redundantes". **Es una intención patente.**

Por otra parte, aunque reconozco que se les brinda deferencia a las opiniones del Secretario del Departamento de Justicia y otras interpretaciones de funcionarios públicos a pesar de que no son vinculantes, deseo discutir dos (2) de ellas. El 7 de marzo de 2019, el Departamento de Justicia emitió una consulta respecto a la retroactividad de la Ley Núm. 242-2018. En esta, la entonces Secretaria de Justicia, Hon. Wanda Vázquez Garced dispuso que:

> [S]e desprende claramente de la Exposición de Motivos del estatuto que la intención legislativa al aprobar las enmiendas al Código de Seguros fue para proveer mecanismos procesales a los asegurados con **reclamaciones pendientes** al asegurador de su propiedad, así como agilidad a los procesos relacionados con los daños causados por el impacto de los huracanes Irma y María.

A lo anterior debo añadir que, el 20 de marzo de 2019, la Oficina del Comisionado de Seguros circuló la Carta Normativa Núm. CN-2019-248-D dirigida a todos los aseguradores que suscriben seguros de propiedad en Puerto Rico, así como sus agentes y representantes autorizados, productores, ajustadores y público en general. En la

mencionada carta, el Comisionado de Seguros, Javier Rivera Ríos, estableció una guía para el proceso de valoración o *appraisal* establecido por la Ley Núm. 242-2018. Mediante esta carta normativa, el Comisionado de Seguros expresó que:

> Aunque de la Sección 6 de la Ley Núm. 242-2018 no alude a la aplicación retroactiva de las disposiciones del proceso de appraisal en esa ley, **de su Exposición de Motivos se desprende la clara intención legislativa de hacer tales disposiciones de ley aplicables a las reclamaciones surgidas por los huracanes Irma y María que estén pendientes de resolver**, aun cuando hayan sido presentadas antes de la aprobación de esta ley. (Énfasis suplido).

Por lo tanto, la interpretación que hace este Tribunal en el día de hoy es cónsona con la del Departamento de Justicia y la Oficina del Comisionado de Seguros, puesto que la intención de la Asamblea Legislativa queda plasmada **claramente** en la Exposición de Motivos del estatuto.

## IV

Discrepo del proceder de la Mayoría de catalogar el procedimiento de *appraisal* como uno exclusivamente de carácter procesal que no conflige con el principio de irretroactividad de las leyes. Es importante destacar que el procedimiento creado por la Ley Núm. 242-2018 representa gestiones y preparación legal para las partes, adicionales a las ya incurridas, además de nuevos gastos administrativos, legales y de otros tipos. A cinco (5) años del paso de los Huracanes Irma y María, los casos aún pendientes que se verán afectados por esta decisión han pasado por largos trámites judiciales, los cuales se verán paralizados hasta tanto se ventile la controversia en el

procedimiento de *appraisal*. Por lo que este nuevo procedimiento significa un cambio significativo a las estrategias ya trazadas. De más está decir que el procedimiento de *appraisal* altera el acuerdo pactado entre los contratantes. Más importante aún, es el Estado es quien modifica un contrato entre partes privadas y altera las condiciones ya pactadas.

A mi entender, catalogar el referido procedimiento como uno de carácter procesal porque no afecta ningún derecho previamente adquirido, es un razonamiento simplista. Los casos citados en la Opinión Mayoritaria para llegar a esta conclusión no tienen las mismas características que las del presente caso. En *Clases A, B, C v. PRTC*, 183 DPR 666 (2011), la controversia versaba sobre la concesión de la jurisdicción primaria y exclusiva a la Junta Reglamentadora de Telecomunicaciones para dilucidar todo reclamo sobre los servicios de telecomunicaciones. En el caso de *Ortiz v. Fernós López*, 104 DPR 851 (1976), la controversia giraba en torno a si procedía la aplicación retroactiva de la Regla 11 de la Administración del Tribunal de Primera Instancia. Mientras que, *Cortés Córdova v. Cortés Rosario*, 86 DPR 117 (1962), versa sobre un derecho ya adquirido que no sería afectado por legislación posterior y, por tanto, tenía carácter sustantivo. Ninguna de estas controversias atendió un asunto en el que el Estado interfiriera y alterara lo pactado en un contrato entre partes privadas.

Por otra parte, es necesario examinar jurisprudencia federal similar a la del presente caso. En *Vesta Fire Insurance Corp. v. State of Florida*, 141 F.3d 1427 (11th Cir. 1998), el tribunal confirmó una legislación que restringía la capacidad de las aseguradoras para retirarse del mercado de seguros residenciales posterior al Huracán Andrew. Esta ley dispuso que, en un período de doce meses, ninguna aseguradora podría cancelar o negarse a renovar más del 5% de sus pólizas residenciales en Florida o más del 10% de sus pólizas residenciales en un solo condado de Florida. Íd., pág. 1429. El tribunal admitió que la legislación sustancialmente menoscabó los derechos de los aseguradores, pero, determinó que era constitucional porque el Estado había demostrado un propósito público legítimo: la protección y estabilización de la economía de la Florida, particularmente el mercado de bienes raíces. Íd., pág. 1434.

En *State v. All Prop. & Cas. Ins. Carriers*, 937 So. 2d 313 (La. 2006), se presentó una alegación similar en cuanto a un estatuto que amplió el plazo de prescripción para los asegurados demandar a sus aseguradoras por la cobertura de su póliza. El tribunal determinó que el propósito de los estatutos era proteger la salud y el bienestar general de los ciudadanos de este estado afectados por los Huracanes Katrina y Rita, un propósito que el tribunal consideró significativo y legítimo. Íd., pág. 326. El tribunal llegó a la conclusión de que la Asamblea Legislativa había utilizado medios razonables para lograr este propósito.

Incluso, los tratadistas de seguros han establecido que, como regla general, los estatutos que retroactivamente hacen mandatorio los procedimientos de arbitraje o de *appraisal*, así como los que alteran derechos establecidos pueden no estar cumpliendo con las salvaguardias constitucionales. Véase, 1 Plitt, Maldonado and Roger, *Couch on Insurance*, sec. 209.19 (2021). Por lo tanto, considerando la intención legislativa y tras exponer decisiones federales en un marco similar al de autos, lo que resta es evaluar si el Estado cumple con el criterio de racionalidad.

De los hechos en el caso de autos surge que existía una relación contractual entre los peticionarios y la recurrida. Por lo tanto, la modificación que realiza el Estado al implantar retroactivamente el procedimiento de *appraisal* – el cual no estaba disponible en el contrato entre las partes – debe ser considerado un menoscabo severo porque altera lo pactado entre los contratantes. En particular, el procedimiento de *appraisal* representa gestiones y preparación legal adicionales para las partes, además de las ya incurridas, a lo que también hay que sumar nuevos gastos económicos.

Ahora bien, el Estado debe probar que posee un interés público legítimo y significativo al intervenir sustancialmente en la contratación entre partes privadas, incluyendo un procedimiento de valoración que no estaba contemplado en la póliza de seguros. En la Exposición de

Motivos de la Ley Núm. 242-2018, la Asamblea Legislativa expone que las reclamaciones de seguros a causa de esta catástrofe en el año 2017 "ha dilatado la recuperación económica de muchos negocios y ciudadanos, lo cual ha afectado negativamente a la economía y, en algunos casos, aumentado la migración de ciudadanos y precipitado el cierre de negocios". Estas razones nos llevan a concluir que el Estado ha demostrado tener un interés público legítimo y significativo para alterar la relación contractual en cuestión.

Por último, entiendo que los cambios contractuales provocados por la Ley Núm. 242-2018 están basados en condiciones razonables y apropiadas para cumplir con el fin público de esta regulación. Lo anterior, ya que agiliza y facilita que las partes lleguen a un acuerdo más rápido sobre el pago por el valor justo de la reclamación. Más aún, cuando cientos de familias todavía se encuentran sufriendo por los estragos estructurales y económicos causados por los Huracanes Irma y María. Además, este procedimiento no priva a ninguna de las partes de recurrir a los tribunales en caso de que surjan disputas legales. El procedimiento de *appraisal* se limita simplemente a resolver las discrepancias entre las partes sobre el valor de la reclamación. Por lo que el Estado cumplió con demostrar tener un interés legítimo y que su modificación a las relaciones contractuales está racionalmente relacionada.

**V**

Por los fundamentos expuestos anteriormente y por existir un claro menoscabo a las obligaciones contractuales de las partes en el presente caso, procedía aplicar el criterio de racionalidad a las actuaciones del Estado para evaluar la constitucionalidad del estatuto. Además, de la Exposición de Motivos de la Ley Núm. 242-2018 surge una clara intención por parte de la Asamblea Legislativa de que su aplicación fuera retroactiva. Por consiguiente, concurro con la Opinión Mayoritaria de este Tribunal.


                                    Mildred G. Pabón Charneco
                                          Jueza Asociada